**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically at the time and date indicated, which may be materially different from its entry on the record.**



Russ Kendig
United States Bankruptcy Judge

**Dated: 04:28 PM October 19, 2012**

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| | ) | CHAPTER 7 |
| IN RE: | ) | |
| | ) | CASE NO. 12-60726 |
| ADRIAN THOMAS SPUHLER and | ) | |
| STEPHANIE KAE SPUHLER, | ) | JUDGE RUSS KENDIG |
| | ) | |
| Debtors. | ) | **MEMORANDUM OF OPINION (NOT** |
| | ) | **INTENDED FOR PUBLICATION)** |
| | ) | |

Now before the court is the chapter 7 trustee's ("Trustee") objection to claimed exemption ("objection"), filed on May 24, 2012.

The court has jurisdiction over this case pursuant to 28 U.S.C. § 1334 and the general order of reference entered in this district on April 4, 2012. Venue in this district and division is proper pursuant to 28 U.S.C. § 1409. This proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the court.

## FACTS

On Schedule B, Debtors listed an interest in $50,000.00 as a result of a wrongful death suit and on Schedule C listed the entire $50,000.00 as exempt pursuant to O.R.C. § 2329.66(A)(12)(b).

1

Trustee objected to Debtors' claimed exemption on the basis that Debtors' exemption is limited to the amount reasonably necessary for Debtors' support.

On August 30, 2012, the Court held an evidentiary hearing on Trustee's objection. Debtors each testified on their own behalf and Trustee also questioned Debtor Adrian Spuhler ("Mr. Spuhler" or "Debtor").

In a very unfortunate scenario, Mr. Spuhler's father passed away on December 2, 2000 when Mr. Spuhler was a junior in high school. Mr. Spuhler testified that he learned from newspaper reports that, on a snowy night, a white truck was backed across both lanes of a road. His father was driving down the road, was unable to see the white truck blocking the road due to the snowy conditions, and collided with the truck without any attempt to stop, dying instantly. Mr. Spuhler and his family initiated a wrongful death suit.

As a result of the wrongful death of his father, Mr. Spuhler received an annuity administered by Allstate Life Insurance Company. The annuity contract provides for the following payments to Mr. Spuhler: $10,000.00 per year from August 1, 2002 through August 1, 2007; $40,000.00 on August 1, 2008; and $50,000.00 on August 1, 2013. Parties stipulated that all payments due under the annuity contract have been paid to Mr. Spuhler except for the $50,000.00 payment to be paid on August 1, 2013 and, thus, the only portion of the annuity at issue currently is the final $50,000.00 payment ("$50,000.00 settlement"). Parties also stipulated that the payments were made on account of the wrongful death of Mr. Spuhler's father, and that Mr. Spuhler was a dependent of his father on the date of his father's death.

Mr. Spuhler is currently twenty-nine (29) years old and has a six (6) year old son. Mr. Spuhler separated from co-debtor, Stephanie Spuhler, in 2007. Mr. Spuhler attended college for one (1) year with an integrated science major, but did not complete a degree. After that, he attended trade school for one (1) year and completed a certification in general construction, electrical, and plumbing. He has been employed by Lowes Home Centers, Inc. for the past seven (7) years and currently earns $12.61 per hour, which is a net monthly income of $1,467.82. He anticipates that he will receive pay increases of approximately $0.20 to $0.25 per hour each year. From his income from Lowes, Mr. Spuhler currently contributes 3% to a 401(k) account, which had a balance as of the petition date of $3,211.95.

Mr. Spuhler reports monthly expenses of $1,882.00,[1] which includes the following: $445.00 for rent, $150.00 for electricity and heating, $35.00 for cell phone, $107.00 for cable and internet, $35.00 for home maintenance, $300.00 for food, $65.00 for clothing, $10.00 for laundry and dry cleaning, $70.00 for medical and dental expenses, $200.00 for transportation, $50.00 for recreation, $54.00 for auto insurance, $66.00 for an equity loan payment, $260.00 for child support, and $35.00 for personal grooming and haircuts. Mr. Spuhler testified that his mother helps him make up the monthly shortfall of $414.18, which is the difference between his monthly net income of $1,467.82 and monthly expenses of $1,882.00.

---

[1] Debtor's Schedule J filed as Exhibit 2 on August 27, 2012.

2

Mr. Spuhler has fibromyalgia, which he testified causes him chronic joint paint, muscle pain, and intestinal issues. Currently, he is not seeking ongoing treatment for his condition due to the expense of doctors' appointments and medications. Mr. Spuhler also has some growths on his hands, but he is unable to afford the cost of treatment for them. While Mr. Spuhler has health insurance, the co-pays for which he is responsible are not affordable for him to seek treatment at the present time. Mr. Spuhler testified that his medical condition affects his ability to work. While he can withstand the pain while at work, after work he is often incapable of doing much. At one point, Mr. Spuhler had to use a cane to walk after work. While Mr. Spuhler's son has had some medical problems in the past, he has no ongoing medical conditions that require any treatment.

## LAW AND ANALYSIS

Individual debtors may exempt specific property from the bankruptcy estate. 11 U.S.C. § 522(b)(1). States may "opt out" of the Federal exemption scheme, which allows states to create more generous or more restrictive exemptions than enumerated in the Federal exemptions set forth in § 522(d). 11 U.S.C. § 522(b)(2). Ohio has chosen to "opt out" of Federal exemptions and, therefore, debtors domiciled in Ohio are limited to the exemptions enumerated in OHIO REV. CODE § 2329.66. O.R.C. § 2329.662. Exemptions are liberally construed in favor of the debtor because the purpose of exemptions is to "protect funds intended primarily for maintenance and support of the debtor's family." Daugherty v. Cent. Trust Co. of Northeastern Ohio, N.A., 504 N.E.2d 1100, 1103 (Ohio 1986).

Mr. Spuhler claims the settlement exempt pursuant to Ohio Rev. Code § 2329.66(A)(12)(b). Section 2329.66(A)(12)(b) provides:

> Every person who is domiciled in this state may hold property exempt from execution, garnishment, attachment, or sale to satisfy a judgment or order, as follows: … [t]he person's right to receive, or moneys received during the preceding twelve calendar months from, any of the following: … [a] payment on account of the wrongful death of an individual of whom the person was a dependent on the date of the individual's death, to the extent reasonably necessary for the support of the person and any of the person's dependents.

The determination of whether a claimed exemption is proper pursuant to OHIO REV. CODE § 2329.66(A)(12)(b) is based upon three elements: "(1) the payment must be made on account of the wrongful death of an individual; (2) the debtor claiming the exemption must have been a dependent of the individual who died; and (3) the proceeds or any portion thereof must be reasonably necessary for the debtor's support." In re Michel, 332 B.R. 557, 560 (Bankr. N.D. Ohio 2005); accord In re Abbott, 466 B.R. 118, 125 (Bankr. S.D. Ohio 2012).

Trustee does not contest that Debtor has met the first and second elements. In addition, Trustee concedes that $12,500.00 of the settlement proceeds are reasonably necessary for the debtor's support and Debtor should be allowed an exemption of $12,500.00 in the settlement

proceeds. Thus, the only remaining issue is whether the remaining $37,500.00 of the settlement of $50,000.00 is reasonably necessary for Debtor's support.

"Whether settlement proceeds are 'reasonably necessary' looks to the basic needs of the debtor, both present and future, without regard to his previous lifestyle or status." Michel, 332 B.R. at 560. Courts look at the following factors to evaluate whether a payment is reasonably necessary for support:

(1) Debtor's present and anticipated living expenses;
(2) Debtor's present and anticipated income from all sources;
(3) Age of Debtor and dependents;
(4) Health of Debtor and dependents;
(5) Debtor's ability to work and earn a living;
(6) Debtor's job skills, training and education;
(7) Debtor's other assets, including exempt assets;
(8) Liquidity of other assets;
(9) Debtor's ability to save for retirement;
(10) Special needs of the debtor and dependents;
(11) Debtor's financial obligations.

Id.; *accord* Hamo v. Wilson (In re Hamo), 233 B.R. 718, 726 (B.A.P. 6th Cir. 1999); Abbott, 466 B.R. at 130. A court's analysis need not include discussion of every factor and is not restricted to these factors. Abbott, 466 B.R. at 130.

1. Living Expenses

Mr. Spuhler separated from his spouse, co-debtor Stephanie Spuhler, in 2007 and they currently maintain separate households. For purposes of the instant matter, the Court looks only at Mr. Spuhler's expenses. At the time of filing, Mr. Spuhler scheduled his living expenses at $1,277.00. In an amended budget filed as Exhibit 2 for the evidentiary hearing, Mr. Spuhler increased his expenses to $1,882.00, which are detailed above.

Trustee argues that Mr. Spuhler's living expenses, as reported on Exhibit 2, unreasonably increased, and are not documented, from the living expenses filed with the petition on March 14, 2012, resulting in an increase of $605.00 in expenses.[2] Specifically, Trustee questioned Debtor as to the following increases in expenses: transportation, heating and electric, household maintenance, food, clothing, and recreation. Debtor's transportation expenses increased from $120.00 to $200.00 per month, for which Debtor was unable to give any significant reason as for the increase. Debtor's heating and electric expense increased from $100.00 from $150.00 per month and Debtor could not answer why it increased, but testified that it had increased.

Debtor's household maintenance expense increased from $0.00 to $35.00 per month. When Trustee questioned Debtor about the expense given Debtor's status as a renter, rather than

_____
[2] Debtor's increased expenses also include $260.00 per month for child support which Trustee does not dispue.

4

home owner, Debtor answered that he has fixed things in his apartment that were necessary to run the household. Debtor's food expense increased from $250.00 to $300.00 per month, which Debtor explained was the result of his attempts to eat healthier. Debtor's clothing expense increased from $40.00 to $65.00 per month. Trustee questioned Debtor regarding the increase given that Debtor did not change jobs and did not require specific clothing for his job. Debtor could not provide any meaningful explanation for this increase. Finally, Debtor's recreation expense increased from $0.00 to $50.00 per month for which Debtor stated he bought a video game. Trustee noted that a video game is a one-time, not ongoing expense.

The Court finds that Debtor's expenses are reasonable. Mr. Spuhler's living expenses are modest and he does not report any expenses for luxuries. Debtor's inability to explain the reasons for, and document, the increases does not trouble the Court. Debtor's initial expenses were estimates, were extremely modest, and he has since developed a more accurate budget. Further, the increases, with the exception of the recreation expense, were for basic living expenses necessary for Debtor's support. Moreover, Debtor is entitled to a reasonable expense for recreation and $50.00 per month for recreation qualifies as reasonable.

Mr. Spuhler's anticipated living expenses are similar to his current expenses except it is likely that he will incur additional costs for health care and medications. Mr. Spuhler testified that he is unable to currently pay for health care and medication for himself due to the costs and that he would seek treatment if not for the cost. The Court believes that Debtor will likely seek health care in the future and will incur additional costs to do so.

2. Income

Mr. Spuhler's net income is just $1,467.82 per month from Lowe's. He anticipates no significant increase in income besides nominal cost of living pay increases. Debtor's income is less than his monthly expenses of $1,882.00. Debtor also receives approximately $400.00 per month from his mother which makes up the shortfall between his monthly net income and his monthly living expenses. Besides his income from Lowe's and the gifts from his mother, Debtor has no other sources of income. There was no evidence presented to indicate that Debtor's income would substantially increase in the future. Debtor's income will not afford him any opportunity to accumulate savings over the costs of a minimal standard of living.

3. Age

Debtor is twenty-nine (29) years old and has many years in which to save for retirement before reaching retirement age. Debtor also has a six (6) year old son for which Debtor pays child support.

4. Health

Debtor has health issues, including fibromyalgia and other conditions as discussed above. The fibromyalgia causes him chronic joint paint, muscle pain, and intestinal issues. Debtor

5

testified that he cannot anticipate when his fibromyalgia will flare up, which results in him having both good days and bad days.

Debtor is currently unable to afford treatment for his health conditions due to the cost of the co-pays. Rather than taking prescription medications, which he cannot afford, Debtor takes ibuprofen which upsets his stomach. Debtor testified that he would seek further treatment for his health issues if he had the money to do so. Debtor estimated the cost of co-pays at $35.00 per visit to a specialist and $70.00 to $150.00 for each medication.

Debtor's son had some past medical issues that required treatment, but those issues are non-recurring.

5. Ability to Work

Debtor testified that his health conditions affect his ability to work. He can usually withstand the pain for the work day, but is often left incapable of doing other activities after work. In addition, Debtor testified that at one point, he had to use a cane to walk after workdays. Debtor also testified that in the last two years he has not been able to take any days off from work because he has no sick hours remaining. Before that time, Debtor missed days of work due to his health condition. Given Debtor's testimony, he is currently able to work. However, Debtor's health issues may progress to a point where he is no longer able to work at his current job for health reasons. It is unlikely that he will materially advance his financial condition through work changes.

6. Job Skills, Training, and Education

Debtor has a limited education. He has a high school diploma. In addition, he attended college, but did not complete a degree. After that, he obtained a certification in general construction, electrical, and plumbing. It does not appear that Debtor's certification has or will positively impact his ability to earn an income. In addition, should Debtor become unable to work at his current job for health reasons, he may not be qualified to perform other jobs requiring less physical work without further education.

7. Assets

Debtor's assets are very limited. Schedule B reports that, aside from the wrongful death settlement, Debtor has a joint checking account ($700.00), a security deposit with his landlord ($445.00), household goods and furnishings ($3,500.00), clothing ($290.00), jewelry ($500.00), a 401(k) account ($3,211.95), and a 2001 Chrysler Sebring, valued at $2,128.00. Debtor claims all of these assets as exempt and no objections have been made to these exemptions.

Debtor also testified that he junked the 2001 Chrysler Sebring as it was falling apart. He received a 2001 Chrysler PT Cruiser as a gift from his mother because he could not afford a new car. The values of both vehicles are similar.

The Court is troubled by the fact that Debtor received a total of $90,000.00 in annuity payments from the settlement previously, but has no assets to show for it. It is unclear, and there was no testimony regarding, how Debtor spent the other payments.

8. Liquidity

As discussed above, Debtor has no liquid assets over and above his exemptions.

9. Ability to Save for Retirement

Debtor has minimal retirement savings of $3,211.95 and contributes 3% of his salary to his 401(k) account. Debtor expects to maintain the 3% contribution for the foreseeable future. Debtor has many years left before he reaches retirement age. However, given his low income and contribution rate of 3%, it is unlikely that Debtor will be able to save any meaningful amount toward his retirement. Moreover, since Debtor has a shortfall between his income and expenses, he is unable to contribute any other money to retirement savings.

10. Special Needs

Debtor and his son have no special needs aside from the health issues discussed above.

11. Financial Obligations

Debtor has a financial obligation of $260.00 for child support for his son, which is included in his monthly expenses of $1,882.00.

After considering the totality of Debtor's circumstances under the Hamo eleven-factor test, several factors weigh in favor of exemption, including Debtor's low income, reasonable expenses in excess of his income, ability to save for retirement, limited education, and ongoing health issues. These factors are compelling and weigh heavily in favor of exemption. Conversely, Debtor is young and faces a long lifetime in which to increase his education, manage his health issues, and increase his income. These factors are also compelling and weigh in favor of non-exemption. When balancing the factors in favor of exemption and those against exemption, the Court finds that the entire $50,000.00 of the settlement is reasonably necessary for Debtor's present and future support and, therefore, is exempt.

The Abbott case is compelling and serves as a guideline for the Court. In Abbott, the debtor was entitled to receive a monthly annuity of $2,000.00 per month and a lump sum payment of $200,000.00. 466 B.R. at 122. The court found that the debtor was entitled to exempt $1,505.55 per month of the monthly annuity payment and $56,448.00 of the lump sum payment. Id. at 134. This equates to the exemption of approximately seventy-five (75) percent of the monthly annuity payments and twenty-eight (28) percent of the lump sum payment.

However, there are facts in <u>Abbott</u> that distinguish it from the instant matter.   As noted above, the wrongful death settlement at issue in <u>Abbott</u> consisted of an annuity of $2,000.00 per month and a lump sum of $200,000.00.   In contrast, Debtor's settlement is smaller, a lump sum of $50,000.00, and contains no monthly annuity payment component.   In <u>Abbott</u>, the monthly annuity payment of $2,000.00 helped to supplement the debtor's other income such that she had a monthly income approximately double that of Debtor's.   <u>Id.</u> at 131.   In <u>Abbott</u>, the debtor had fewer health issues and her health care was fully covered by insurance, <u>id.</u> at 132, which is not the case for Debtor.   Finally, in <u>Abbott</u>, the debtor had no dependents, <u>id.</u> at 134, while Debtor in the instant matter has a young son.   Given these differences in the facts, the Court finds that <u>Abbott</u> is distinguishable from the instant matter and that it is reasonable that Debtor exempt a higher percentage of the settlement than the debtor in <u>Abbott</u>.

The instant matter is more similar to the <u>Michel</u> case than to the <u>Abbott</u> case.   In <u>Michel</u>, the debtor received a wrongful death settlement of $300,000.00 and the trustee sought turnover of $26,000.00, which represented the allowed claims.   332 B.R. at 558.   The court found that the debtor was entitled to exempt the entire settlement due to the debtor's significant medical issues, income that was barely sufficient to meet the debtor's low expenses, and inability to save for retirement.   <u>Id.</u> at 560-61.   These facts are very similar to the instant matter and serve as guidance to the Court in finding that Debtor may exempt the entire settlement of $50,000.00.

Accordingly, the Court finds that Debtor may exempt $50,000.00 of the settlement as reasonably necessary for his present and future support.   An order will be entered simultaneously with this opinion.

#          #          #

**<u>Service List:</u>**

Anthony J DeGirolamo
116 Cleveland Ave., N.W.
Suite 307
Canton, OH 44702

Nicole L. Rohr
Thrush & Rohr LLC
4410 22nd Street NW
Canton, OH 44708

Adrian Thomas Spuhler
Stephanie Kae Spuhler
2700 Harrison Ave NW Apt. 20
Canton, OH 44709

8